No. 25,313.

· THE STATE OF KANSAS, ex rel. CHARLES B. GRIFFITH, Attorney-general, *Plaintiff,* v. RALPH A. CANNON et al., *Defendants*:

SYLLABUS BY THE COURT.

1. QUO WARRANTO—*New School District—Territory May Be Taken from Consolidated School District.* Following the rule of *The State, ex rel., v. School District,* 112 Kan. 60, 209 Pac. 974, it is held that in the formation of a new school district territory may be taken from a consolidated school district.

2. SAME—*Organization of a New School District—No Sufficient Ground for Ouster of Officers Elected.* Written notice of the organization of a school district is required to be given, but where a district is formed without such notice and the parties opposing such action have had actual notice and take an appeal to the board of county commissioners where a hearing is had, participated in by the interested parties, and a decision is made by that tribunal; and where thereafter formal statutory notice is given by the county superintendent of the formation of the district, and another hearing is had and a decision made sustaining the creation of the district from which another appeal is taken to the board of county commissioners, where upon a hearing the organization of the district is again approved, the court will not in an action of quo warranto hold the organization to be invalid because of the failure of the county superintendent to give written notices of the original hearing, nor adjudge an ouster of the officers from the positions in the new district to which they had been elected.

Original proceedings in quo warranto. Opinion filed June 7, 1924. Judgment for defendants.

*Charles B. Griffith,* attorney-general, *W. C. Ralston,* assistant attorney-general, *O. S. Samuel, Gilbert H. Frith, and Louis' E. Clevenger,* all of Emporia, for the plaintiff.

*F. S. Jackson,* of Topeka for the defendants.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an action in quo warranto challenging the legality of four school districts, numbers 7, 12, 14 and 15, Greenwood county, naming as defendants the county superintendent of public instruction, the county commissioners of Greenwood county, and the officers of the several school districts involved. Previously several districts had been consolidated with district number 100, forming a district known as union school district number 6, Greenwood county, and officers were elected and qualified as the district board of the consolidated district. The organization turned out to

be ineffective, and its officers were unable to function because the people refused to vote bonds to construct school buildings, and at regularly called meetings refused to make a levy for school purposes. About June 23, 1923, residents of the union district presented petitions to the county superintendent requesting him to organize, out of part of the territory comprising union district number 6, districts 7, 12, 14 and 15. On the consideration of these petitions the county superintendent allowed the petitions as to districts 7 and 14, and disallowed them as to districts 12 and 15. These petitions were heard without any notice of his intention to hear and take action on the same. On June 23, 1923, he issued an order creating district number 14, and June 29, 1923, a further order creating district number 7, following which he immediately posted notices in the latter districts so organized, stating that the order creating the districts would be effective if no appeals were taken. Appeals were taken from all of the orders of the county superintendent, including the disallowance of the petitions for districts 12 and 15, to the board of county commissioners, and the superintendent certified and transmitted to the board a transcript of his action in all the cases and the subject matter generally. On July 17, 1923, the county commissioners heard the appeals and affirmed the action of the county superintendent in creating districts 7 and 14, but overruled his action in refusing to create districts 12 and 15. The county commissioners made and issued an order creating all four of the districts out of territory wholly within the union district. The action of the county superintendent and the officers in creating districts 7, 12, 14 and 15 operated to reduce the territory· comprising the union district to that originally comprising old district 100. An attempt had been made to enjoin the county commissioners from acting on the appeals, and a temporary restraining order to that effect was granted, but afterwards the district court dissolved the same and instructed the county commissioners that it was their duty to pass on the appeals. After the action of the county superintendent he attempted to overcome the failure to give notice when the districts were organized, and gave twenty days' notice of a hearing whether these districts should be created as petitioned for, and fixed August 29 as the date of such hearing. These districts had already been created under the order of the board of county commissioners. On August 29 the hearing, of which notice had been.

The State, ex rel., v. Cannon et al.

given, was regularly held, and the county superintendent then determined that the districts petitioned for were already in existence and declined to make another order establishing them. Appeals from his action were promptly taken and the matter again brought before the board of county commissioners for its decision. The appeals were heard, and on the first Monday of September, 1923, the board sustained the county superintendent and approved the organization of the school districts as made.

The first contention is that in the organization of new districts the county superintendent is not authorized to form them from territory of a consolidated district. A consolidated district is no more than an enlarged school district, and it has been determined that the county superintendent in organizing a new district may form it from territory which is embraced in a consolidated district. (The State, ex rel., v. School District, 112 Kan. 60, 209 Pac. 974.) It is argued that the instant case is distinguishable from the one cited, as the action taken by the county superintendent practically and seriously impairs the efficiency of the consolidated district, which had been formed on the authorization of the electors voting and residing therein. It appears that the organization of the new district left considerable territory in the consolidated district, which in fact included all of the territory of old district 100, and no reason is seen why that district may not carry on. The law provides that school districts may be changed by the county superintendent when the educational needs and interests of the inhabitants require it. (R. S. 72-213.) While a consolidated district is organized by the county superintendent after a vote of the people rather than upon the petition of the residents or upon the initiative of the county superintendent, nothing is found in the statute which prevents a change of a consolidated district in the way provided for a change in an ordinary district. Both are school districts, and both may be altered when the best interests of the people will be subserved by a change. The power and discretion to make such organizations and changes is vested in the county superintendent, and in case of an appeal in board of county commissioners.

The second objection is that the county superintendent failed to give notice of the organization of the new districts. It appears that he acted on petitions in the first instance, and held hearings as to the creation of such districts without posting written notices of such

hearings. A notice is required before a new district is created or a change made. (R. S. 72-213.) While the required written notice was not given, there was no lack of actual notice, as the proposed action was sharply contested by the contending parties, and when the decisions of the county superintendent were made those opposed to his action promptly took appeals to the board of county commissioners. In that tribunal the contending parties appeared and the matter of organization and change was again threshed out. When the parties appealed from the decision of the county superintendent they vested the board of county commissioners with jurisdiction of the issues involved, and thereby the defect or omission of the written notice by the county superintendent was cured. (*School District v. Wolf*, 78 Kan. 805, 89 Pac 237; *The State, ex rel., v. School District,* supra.) It further appears that after the decision of the board on the appeals the county superintendent gave curative written notices of the organizations, fixing hearings thereon for August 29, 1923, and at that time hearings were had, and he then decided that the new districts were in fact in existence, thus affirming the order declaring them to be organized. Appeals were taken from this decision and the whole matter was regularly brought before the board of county commissioners, and that board again approved the formation of the districts. Since the appeals were heard officers have been elected and qualified in the new districts, and they have since that time been conducting schools therein. What remains of the consolidated district has been functioning, and if additional territory is found to be necessary it is within the power of the county superintendent to add other territory to it.

In quo warranto the court is vested with considerable discretion (*Tarbox v. Sughrue,* 36 Kan. 225, 12 Pac. 935; *The State v. Bowden,* 80 Kan. 49, 101 Pac. 654), and in view of the appeals, the hearings had on the appeals, and the subsequent notices, hearings and decisions, we conclude that the lack of notice of the original action of the county superintendent is not a good ground for holding the organizations to be void or for the ouster of the officers of the new districts.

Judgment must therefore go for the defendants.