**WEST ORANGE–COVE CONSOLIDATED INDEPENDENT SCHOOL DISTRICT et al., Appellants,**

v.

**COUNTY BOARD OF SCHOOL TRUSTEES OF ORANGE COUNTY, Texas, et al., Appellees.**

**No. 7008.**

Court of Civil Appeals of Texas.

Beaumont.

May 24, 1968.

Keith, Mehaffey & Weber, Beaumont, for appellants.

Stephenson, Thompson & Morris, Orange, for appellees.

PER CURIAM.

This is an action brought by the West Orange–Cove Consolidated Independent School District attacking the order of the Orange County Board of School Trustees, annexing the Orange Common School District #1 to the West Orange-Cove Consolidated Independent School District. Trial was by jury, but at the close of all of the testimony, the jury was discharged and the court rendered judgment upholding the validity of the order under attack. The parties will be referred to herein as "West Orange," "Orange County Board," and "Orange Common School District."

The undisputed evidence shows the following occurred. (1) June 26, 1967, the voters of Orange Independent School District voted to abolish the district. (2) July 3, 1967, the Commissioners Court declared the Orange Independent School District abolished. (3) July 14, 1967, the Orange County Board created a common school district out of the former Orange Independent School District. (4) October 17, 1967, the Orange County Board entered an order annexing the Orange Common School District to West Orange.

West Orange's first point of error is that the procedure outlined in Article 2806 Vernon's Ann.Civ.St. is the only way whereby independent school districts may be consolidated. This article provides, in substance, for an election to consolidate common school districts, independent school districts, and common school districts with independent school districts. For consolidation to be effected, a majority in each

district must vote in favor of such consolidation.

It is admitted by Orange Common School District that the statement contained in West Orange's first point of error may be correct, and the procedure outlined in Article 2806 V.A.C.S. may be the only way two independent school districts can be *consolidated,* but it is not the exclusive way for them to be *combined.* It is contended that the legislature has provided two methods for *combining* school districts, *consolidation* by an election under Article 2806 V.A.C.S. and *annexation* by order of a County Board under Article 2922a V.A.C.S. Article 2922a V.A.C.S. provides in part " * * * the county school trustees may annex one or more common school districts * * * to an independent school district having one hundred fifty (150) or more scholastic population."

It must be kept in mind in considering this point of error, that the election whereby the Orange Independent School District was abolished, was not contested, and the order of the Orange County Board creating the Orange Common School District out of the former Orange Independent School District was not contested. The only order under attack in this appeal is that of the Orange County Board annexing the Orange Common School District to West Orange. It also must be kept in mind that the portion of Article 2922a V.A.C.S. above quoted, places no limitation as to the size of a common school district which may be annexed to an independent school district, and that it is admitted West Orange has a scholastic population in excess of the 150 required for the independent school district by such statute. There is nothing in this statute which indicates the common school district must be smaller than the independent school district to which it is annexed.

Article 7, Section 3, of the Constitution of the State of Texas, Vernon's Ann.St., provides:

* * * and the Legislature may also provide for the formation of school district by general laws.

In Prosper Independent Sch. Dist. v. County Sch. Trustees, 58 S.W.2d 5, on page 6, the opinion by Commission of Appeals, Section A, 1933, states:

The validity of the act is assailed on various grounds. One of those grounds has reference to the omission to provide for notice to and hearing of the trustees of the district from which territory is proposed to be detached. The contention in this respect is to the effect that the absence of such a provision renders the act invalid under the due process clause of the Constitution (article 1, § 19). *This contention necessarily presupposes that a school district, in its corporate capacity, has a vested right in respect of the territorial boundaries of the district as originally established.* For, if there be no such vested right in the corporation, with respect to the territorial extent of the district, the due process clause, of course, would have no application. *That no such vested right exists is hardly debatable;* for a school district is, at last, but a subdivision of the state for governmental purposes. The transfer of jurisdiction, which is involved in a transfer of a part of the territory of one district to another district, is clearly within the power of the Legislature. The state Constitution specifically authorizes the Legislature to "provide for the formation of school districts by general or special law." Article 7, § 3. With this provision present in the Constitution, the contention under consideration can find no solid ground upon which to rest. Indeed, it is extremely doubtful that the contention could be maintained if the above provision did not appear in the Constitution. There can be no doubt, however, that, except where some right having its foundation in the Constitution will be impaired by the change, *the Legislature,* by virtue of the above constitutional provision, *has authority to change, at will, the territorial boundaries of any school district, and to provide the mode and agencies by which such change shall be*

*effected.* (Emphasis ours) (and cases cited).

The Legislature did provide a mode and agency by which such change shall be effected by Article 2922a V.A.C.S., Authority to Establish, as follows:

In each organized county in this state, and in any county which shall hereafter be organized, the county school trustees shall have the authority to form one or more rural high school districts, by grouping contiguous common school districts having less than four hundred (400) scholastic population and independent school districts having less than two hundred fifty (250) scholastic population, for the purpose of establishing and operating rural high schools; provided, also, that the county school trustees may annex one or more common school districts or rural high school districts, or one or more independent school districts having less than two hundred fifty (250) scholastic population to a common school district having four hundred (400) or more scholastic population, or to an independent district having one hundred fifty (150) or more scholastic population.

█ The emergency clause contained in the acts of 1947, 50th Legislature, p. 798, ch. 398, § 5, is as follows:

The fact that many schools adjoining large common school districts and independent school districts are unable to group under the present high school grouping law; the further fact that such failure to be able to group prevents equal educational opportunities to all the pupils in various localities; and the further fact of unequal and insufficient financial support of many pupils of Texas under the present system, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted.

In construing Article 2922a, the court must ascertain the Legislative intent by looking to the entire act, including caption, body and emergency clause. City of Irving vs. Dallas County Flood Control Dist., 377 S.W.2d 215, reversed 383 S.W.2d 571; Martin v. Sheppard, 129 Tex. 110, 102 S.W.2d 1036; Anderson v. Penix, 138 Tex. 596, 161 S.W.2d 455; Trawalter v. Schaefer, 142 Tex. 521, 179 S.W.2d 765.

A reading of the emergency clause of Article 2922a V.A.C.S. Acts 1947, indicates the Legislature intended to authorize annexation based upon unequal financial advantage of the two respective school districts.

The combining of school districts by annexation under Article 2922a V.A.C.S. has been approved by the courts in this state. The Eastland Court of Civil Appeals handed down its opinion March 8, 1963 in Neill v. Cook, Tex.Civ.App., 365 S.W.2d 824. The trustees of two common school districts brought suit against the county school board attacking the validity of annexations made under Article 2922a V.A.C.S. The opinion of ·the court reads, in part, as follows:

Article 2806 V.A.T.C.S., concerning elections to consolidate, has no application to annexations under Article 2922a and the procedure provided by Article 2806 is not required to be followed in an annexation under Article 2922a. Contrary to appellants' contention an annexation and a consolidation are not the same thing although the end result may be in each case to combine the districts. A consolidation involves the power delegated by the Legislature to voters of school districts. *An annexation under Article 2922a involves the power granted to county school trustees to annex school districts to other school districts. We overrule appellants' contention that the annexation was void because the procedure required in connection with Article 2806 was not followed.* Trinity Independent School District v. District Trustees, Tex.Civ.App., 135 S.W.2d 1021, (Writ Ref.), Board of District Trustees of Lanier Common School

District No. 49, Cass County v. Board of County School Trustees, Tex.Civ.App., 232 S.W.2d 100, (Ref. N. R.E.), Mt. View Common School District v. Blanco County Board of School Trustees, Tex.Civ. App., 149 S.W.2d 224. (Emphasis ours.)

There is no provision in Article 2922a, as amended in 1947, requiring approval of the annexation by the trustees of the districts involved. *There is no requirement for an election,* nor is there a requirement for notice to the school districts annexed. Such authority on the part of the County School Trustees is supported by the plain wording of the statute and it has been upheld in the following cases. District Trustees, etc. v. Pleasanton Independent School District, Tex.Civ.App., 362 S.W.2d 122, Adkins v. Rogers, Tex. Civ.App., 303 S.W.2d 820, (Ref. N.R.E.), La Parita Independent School District v. School Trustees of Atascosa County, Tex.Civ.App., 281 S.W.2d 123, (Ref. N.R.E.), Edwards v. Roberts, Tex.Civ. App., 233 S.W.2d 592. (Emphasis ours.)

In any event numerous cases have *held that the Legislature has authority to grant discretionary power to county school trustees* to group classified school districts for high school purposes, *or to annex classified school districts to other classified school districts as provided in Article 2922a regardless of the desire or consent of the districts or territories affected, and to make such annexations without notice or hearing and without an election.* (Emphasis ours.) (Cases cited.)

█ There was ample legal precedence authorizing the action by the Orange County Board in annexing these two school districts. We have not been cited a single authority, nor have we found one, holding two school districts of the prescribed size and location could not be annexed under Article 2922a V.A.C.S. The point is overruled.

The second point of error is that the order of the Orange County Board annexing West Orange and the Orange Common School District was void because there was no valid hearing had at the time such order was annexed, in that there was no evidence heard or considered on the date the order was entered. It is also contended the order of the Orange County Board was arbitrary and capricious, and not based upon substantial evidence. We consider the two points together inasmuch as they both involve the question of evidence.

It is admitted by the attorney representing West Orange that the substantial evidence rule applies to our consideration of the action taken by the Orange County Board. This principle of law was recently discussed by the Houston Court of Civil Appeals in its opinion dated January 3, 1968, in Rock Island Independent School District v. County Board of School Trustees, 423 S.W.2d 665. This case involved an order of the county school board under Article 2922a V.A.C.S. annexing one independent school district to another. In that case, as in the one before us, at the close of the evidence, the trial judge withdrew the case from the jury, and rendered judgment that the action of the county board was valid. As to the substantial evidence rule, it was written:

It is clear that this appeal is governed by the substantial evidence rule. Pyote Independent School Dist. v. Estes, 390 S.W.2d 3, writ ref., n. r. e.; Neill v. Cook, supra. In a trial under the substantial evidence rule, on appeal to the district court from an order of an administrative agency, the proceeding is not a trial de novo. *The plaintiff has the burden of proving the absence of substantial evidence, that is, the burden of proving that the action of the county board was illegal, arbitrary, capricious, unreasonable or discriminatory. It is the evidence adduced in the trial court, not in the hearing, if any, conducted by the administrative agency, which is determinative of the issue of substantial evidence. The issue of substantial evidence is one of law to be answered by the court—not a question of fact to be answered by the jury.* Under

the substantial evidence rule, *the administrative order in question will be upheld if, considering the entire record in the trial court, that order finds reasonable support in the evidence.* Board of Fireman's Relief & Retirement Fund Trustees of Houston v. Marks, 150 Tex. 433, 242 S.W.2d 181, 27 A.L.R.2d 965; Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022; Neill v. Cook, supra. (Emphasis ours)

▌ It is also clear under the substantial evidence rule that the amount of evidence heard by the Orange County Board is not material to any issue. The evidence we must consider is that heard by the district court. The Supreme Court of Texas states this rule unequivocally in Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022, as follows:

In Texas, in all trials contesting the validity of an order, rule, or regulation of an administrative agency, the trial is not for the purpose of determining whether the agency actually heard sufficient evidence to support its orders, but whether at the time such order was entered by the agency there then existed sufficient facts to justify the same. *Whether the agency heard sufficient evidence is not material.* In fact, the evidence heard by the agency is not per se admissible upon the trial in the district court. Whether it is admissible upon the trial in the district court must depend upon its own merits under the general rules of evidence, and without regard to whether it had theretofore been introduced before the agency. (Emphasis ours.) (Citing cases.)

We, therefore, now look to the evidence produced in the trial court to determine whether or not the order of the Orange County Board finds reasonable support in the evidence.

▌ The record in the trial court contains the following evidence: The Orange Common School District contained 3.88 square miles, or 2,485.95 acres of land. West Orange (which includes Bancroft and Cove) contained 25.2 square miles or 16,222 acres. The student census for West Orange in 1967 was 2307. The student census in the Orange district in 1967 was 5890. The 1967 valuation of property in West Orange was $97,479,560.00 at 28.77% of actual value or $338,802,780.00 at 100% value. The 1967 valuation of property in the Orange district was $110,239,150.00 at 100% value. Divided by the number of students, West Orange had $146,858.00 in valuation for each student and Orange had $18,000.00 in valuation for each student. The Orange County valuation, on the property in the Orange district, at 15% of value would be $16,860,440.00, divided by 5,890 is $2,862.00 per student. That it would be financially impossible for the Orange Common School District to operate, as it would be between $800,000.00 and $1,000,000.00 short of enough tax money. That a survey showed the Orange district had made the greatest local effort to finance itself. Most of the Orange County industry is concentrated in the West Orange district. Approximately 90% of the West Orange taxes are paid by industry. The evidence also showed the following: Incentive aid is paid by the State of Texas to encourage combining of local school systems. Incentive aid is paid to the combined schools for a period of ten years. If Orange was annexed to Little Cypress, the incentive aid would be $17,000.00 per year for ten years, and if Orange was annexed to West Orange, the incentive aid would be $55,000.00 per year for ten years. Orange Common School District pays $873.00 per year above the state minimum for teachers with B.A. or M.A. degrees, while West Orange pays $1,008.00. The ratio of teachers to pupils has a bearing on the educational program. The recommended average for the first three grades is 25. West Orange has 19.64 in the first grade, 18.92 in the second grade, 21.92 in the third garde, 21.42 in the fourth grade, 19.47 in the fifth grade, 18.17 in junior high and 14.42 in senior high.

Witnesses gave the following opinion testimony: County wide consolidation would be desirable for Orange County. The smaller the school district, the more it cost per student to furnish those children the same courses and the same type of education. The overall program of the two schools involved would be better as a consolidated district. The more money you have behind each child you are trying to educate, the more apt you are for that child to get a good education. There being a shortage of teachers, especially in some fields, the school district that is able to pay more money is going to get the teachers that are short. When a teacher comes into a county, an application to teach is placed at several schools, and the teacher considers the amount of money paid, the teaching facilities and whether the buildings are air-conditioned. The prestige of the Orange district schools has declined. The school facilities in West Orange are better than those in the Orange Common School District. Two of the Orange Common School District schools located in Riverside addition are in deplorable condition and are fire traps. We have concluded the order of the Orange County Board annexing the Orange Common School District to West Orange had reasonable support in the evidence.

West Orange's last point of error is that the resolution of Orange County Board, adopted in 1961, reaffirmed in 1963 and 1967, rendered invalid the order of annexation. It is argued, in effect, that West Orange could not get a fair hearing before the Orange County Board, because such Board had already prejudged the case. The resolution referred to is dated May 2nd, 1961 and reads as follows:

## RESOLUTION

WHEREAS, the aim of the County School Board is to provide for the children of Orange County, regardless of residence, the best educational opportunities possible and,

WHEREAS, to this end the said County School Board has been advised by the Orange County School Study Committee and the Texas Research League that this can best be accomplished through a county-wide consolidation or unit system and,

WHEREAS, under present laws consolidation in Orange County can come about only as a result of a majority of the voters in each school district voting in favor of such consolidation and,

WHEREAS, there is a natural unwillingness for a "have" school district to share its wealth with a "have-not" school district, and,

WHEREAS, the power of the County School Board under present laws as concerns Orange County Schools extends only to Common School Districts, and,

WHEREAS, the only apparent hope at this time for county-wide consolidation lies in the willingness of the voters in each of the other seven independent districts to vote themselves into a common school district status in order that the districts might then be attached to the "have" independent school district by County School Board action, and,

WHEREAS, a common boundary must exist between the independent and the common districts at the time of said proposed attachment, and,

WHEREAS, the most orderly progression of such proposed attachments to insure this contiguity would appear to be generally from an east to west direction in the county,

NOW THEREFORE be it resolved that the Orange County School Board as now constituted does hereby pledge itself to act immediately through its power of attachment of common school districts to expedite the realization of the county unit system if the voters of the individual districts so signify by their conversion from an independent status to a common

status for attachment purposes, and we further pledge to attach Bancroft Common School District, if existing, when it becomes evident that the unit system via the conversion route is accepted by other districts.

-------------------------- --------------------

Mr. Ward moved that the resolution be adopted, seconded by Mr. Hatton.

Those voting for the resolution were: Ray Ward, Melvin Hatton and B. V. Stephenson.

Voting against the resolution: Valton Landrum.

-------------------------- --------------------

I, J. B. PEDDY, County Superintendant and Ex-officio Secretary Orange County School Board, hereby certify the above to be a true and correct record of the above resolution which was passed at the above mentioned meeting.

/s/ J. B. Peddy
J. B. Peddy, County Superintendent and Ex-officio Secretary Orange County School Board.

Subscribed and sworn to before this *2nd* day of May, 1961.

/s/ Mrs. Verlie M. Jackson
Notary Public in and for Orange County, Texas.

The substance of this point of error was passed upon in the Rock Island Independent School Dist. Case, supra, from which we quote as follows:

*In the trial court the plaintiff offered evidence from which it could have been found, if relevant, that before January 12, 1967, three members of the County Board, McCreary, Wiese and Engstron, secretly agreed to introduce and vote for the motion for annexation.* (Emphasis ours.)

In the first place, we are of the opinion that such a finding of fact would have been wholly irrelevant to this proceeding which was governed by the substantial evidence rule. In the application of that rule to this cause, *it is presumed, once it is established, that the motion for annexation was passed in a lawfully held meeting, following lawful procedure, that the members of the County Board were reasonable men acting in an honest effort to discharge their duties. The court is not concerned with their mental processes or motives, nor with the facts on the basis of which they acted—it is concerned only with what facts actually existed as shown by the evidence produced in court. If those facts are such that reasonable men in the honest exercise of their duty could have taken the action in question, then it is valid because it is presumed that the administrative agency acted on substantial evidence.* (Emphasis ours.)

■ No attack is made in the case before us, upon the lawfulness of the meeting at which this order was passed, or upon the lawfulness of the procedure at such meeting. We then must presume that the members of the Orange County Board were reasonable men acting in an honest effort to discharge their duties. The law does not permit us to question their mental processes or their motives. Our only concern is with the facts which actually existed, as shown by the record in the trial court. As said in the Rock Island Independent School District Case, supra:

If those facts are such that reasonable men in the honest exercise of their duty could have taken the action in question, then it is valid beacuse it is presumed that the administrative agency acted on substantial evidence.

This point is overruled.

Affirmed.